UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **LATASHA ROUSE & EXABIA ROUSE** & **DANIEL RILEY & JESSICA RILEY** & **OSCAR DAVINES & SHERRYL DAVINES**<br><br>*Plaintiffs*<br><br>*v.*<br><br>**WES MOORE** *in his official capacity as Governor of the State of Maryland*<br><br>&<br><br>**MATTHEW FADER, STEVEN B. GOULD, BRYNJA M. BOOTH, SHIRLEY M. WATTS, MICHELE D. HOTTEN, JONATHAN BIRAN,** and **ANGELA M. EAVES** *in their official capacities as Chief Justice and Justices of the Supreme Court of Maryland* 361 Rowe Blvd. Annapolis, MD 21401<br><br>*Defendants* | **Case No.: 1:22-cv-00129-JKB**<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

**AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF**[1]

---

[1]  Attached as **Exhibit A** is a comparison copy of the changes made herein from the Plaintiff's original complaint filed in this action.  This Amended Complaint is also permitted for filing by the Court's prior Order.  ECF. 39.

Plaintiffs Latasha Rouse and Exabia Rouse ("Mr. & Mrs. Rouse"), Daniel and Jessica Riley ("Mr. & Mrs. Riley"), and Oscar Davines and Sherryl Davines ("Mr. & Mrs. Davines")(collectively "Plaintiffs") do hereby sue Defendants Wes Moore[2] in his official capacity as Governor and Matthew Fader and Steven Gould, Brynja Booth, Shirley Watts, Michele Hotten, Jonathan Biran, and Angela Eaves in their official capacities as Chief Justice and Justices of the Supreme Court of Maryland (hereinafter Moore and Fader, Gould, Booth, Watts, Hotten, Biran, and Eaves will be referred to collectively as the "State of Maryland") for damages, and injunctive and declaratory relief (as well as costs and attorney fees) as stated herein and say in support:

## INTRODUCTION

1.      The Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C.A. § 3901, *et seq.* was enacted for the express purpose:

> **(1)** to provide for, strengthen, and expedite the national defense through protection extended by this chapter to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation; and
>
> **(2)** to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service.

50 U.S.C.A. § 3902.  *See also* https://www.uscourts.gov/services-forms/bankruptcy/bankruptcy-basics/servicemembers-civil-relief-act-scra (last visited February 25, 2023).

---

[2]      Governor Moore succeeded Governor Hogan following the November 2022 election and his subsequent swearing in in January 2023.  Pursuant to Rule 25(d) he has previously been substituted into this action as a proper party (in his official capacity only).  ECF. 36.

2.      To accomplish the broad remedial purpose, Congress intended for the SCRA protections at issue in this case to apply to "**any judicial**…proceeding commenced in any court…in any jurisdiction subject to [the SCRA]" (50 U.S.C.A. § 3912(b)) and "to **any civil action or proceeding**…in which the defendant does not make an appearance" (50 U.S.C.A. § 3931(a))(emphasis added).

3.      The SCRA applies to the State of Maryland (50 U.S.C.A. § 3912(a)(2)) and non-parties like George LeMay ("LeMay").[3] Here, LeMay used Maryland law and rules of procedure administered by the State of Maryland to obtain judgments (as that term is broadly defined in 50 U.S.C.A. § 3911(9)) against Plaintiffs who were entitled to the remedial protections of the SCRA as active-duty servicemembers and who did not make an appearances before the judgments were entered, and thereafter executed upon and allowed to be enforced by the State of Maryland's failure to protect servicemembers as required by the SCRA.

4.      The State of Maryland's laws and rule of procedure at issue in this case relate to the entry and enforcement of purported foreign judgments in Maryland which wrongfully ignore and disregard the mandatory requirements imposed upon the State of Maryland by Congress in the SCRA. These requirements  were designed to protect servicemembers on active duty, but the State of Maryland wishes to ignore those requirements and protections.

---

[3]      Non-party George LeMay was dismissed in from this action previously and is no longer a named party to these proceedings.  ECF. 41.

3

5.       The SCRA mandates two requirements for *every* court in the United States, whether the court is a federal or a state court— that *must* be complied with prior to the entry of *any* judgment:

      a.  50 U.S.C.A § 3912(b)(1) addresses the mandatory requirement for the person seeking a judgment.  It provides:  "[i]n **any** action or proceeding covered by [the law], the court, **before entering judgment for the plaintiff**, shall require the plaintiff to file with the court an affidavit —(A) stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or (B) if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service."  50 U.S.C.A. § 3931(b)(1)(emphasis added).  While 50 U.S.C.A. § 3931(b)(1) requires a plaintiff seeking a judgment to provide an SCRA affidavit to the court, it also mandates that every court must require that a SCRA affidavit be filed before a judgment is entered.

      b.  Additionally, 50 U.S.C.A. § 3931(b)(2) mandates that, if it appears that a defendant is in military service, a court (including every court in the State of Maryland) "may not enter a judgment until after the court appoints an attorney to represent the defendant."

6.       Further, under the Due Process Clause of the Fourteenth Amendment, the State of Maryland does not have jurisdiction to permit collectors to haul active duty servicemembers into Maryland courts when those servicemembers have no connection whatsoever with the State of

Maryland (i.e., they do not live in Maryland, do not conduct business in Maryland, and do not own property in Maryland).

7.     Notwithstanding the mandatory requirement of 50 U.S.C.A. § 3931(b)(1), Maryland law and the rules of civil procedure were utilized in relation to the Plaintiffs which failing to comply with the SCRA and the Due Process Clause of the Fourteenth Amendment, in order to obtain and enforce purported judgments against the Plaintiffs and others without the legal right to do so.  The State of Maryland also turned a blind eye to the loopholes created by its failure to protect servicemembers under the SCRA and non-residents pursuant to the Due Process Clause and allowed the Plaintiffs to be exploited by its statutes and rules of procedure addressed herein which do not comply with the mandatory requirements of the SCRA and the Due Process Clause.

8.     As a direct and proximate result of the State of Maryland's violations of the SCRA and the Due Process Clause of the Fourteenth Amendment described herein, the Plaintiffs have been damaged and sustained losses.

9.     The State of Maryland's Maryland Foreign Judgments Act and various Maryland Rules established by the Supreme Court of Maryland f/k/a the Court of Appeals of Maryland were used to enroll and purported enforce foreign judgments in Maryland—including many of which have expired in the original state or had been reversed by appeal or were otherwise void and unenforceable.

10.     The conduct and practice to which the Plaintiffs and others were subjected was to enroll a foreign judgment in Maryland under the Uniform Enforcement of Foreign Judgments Act, CTS. & JUD. PROC. § 11-801, *et seq.* ("Foreign Judgments Act") and MD. RULE 3-623 (and other related rules), when there was no valid, enforceable judgment in the original state.  The State of

Maryland never sought to verify the purported judgments presented to it in relation to the Plaintiffs were actually valid and instead permitted them to be enrolled and entered as if they were valid and thereafter allowed the Plaintiffs to be collected upon in the Maryland courts based upon the invalid judgments and even though they had no connection whatsoever with the State of Maryland before the conduct at issued in this action.

11.     But for the State of Maryland's (i) failure to ensure its laws and rules of procedure relating to enrollment of purported foreign judgements, garnishments, and subpoenas in compliance with basic Due Process and the SCRA and (ii) willingness to open its courthouse doors to improper debt collection conduct, Plaintiffs would not have sustained any damages or losses from the acts and omissions at issue in this action.

12.     As a result, Plaintiffs are entitled to prospective declaratory and injunctive relief against the State of Maryland to ensure the State complies with the mandatory requirements of the SCRA and Maryland law, including the Foreign Judgments Act and MD. RULE 3-623 (and related rules discussed *infra*) and its records related to them are expunged.  In addition, Plaintiffs are entitled to damages from the State of Maryland for is failure to comply with the mandatory requirements of the SCRA.

13.     To correct these wrongs, the Plaintiffs bring the claims herein as a result of the State of Maryland's violations of the SCRA pursuant to 50 U.S.C.A. § 4042.

14.     Plaintiffs seek: (i) equitable and declaratory relief from the State of Maryland with respect to its violations of the SCRA since the SCRA preempts the Foreign Judgments Act and MD. RULE 3-623 under the Supremacy Clause, U.S. Const. Art. VI; (ii) a finding that the Foreign Judgments Act and MD. RULE 3-623 violates the Due Process Clause of the Fourteenth

Amendment by subjecting citizens and servicemembers of other states with no connection to the State of Maryland whatsoever to come to Maryland to defend their rights; and (iii) the recovery of all other appropriate relief, including money damages, attorney fees, and costs, from the State of Maryland for its violations of the SCRA and state laws governing its practices and procedures in Maryland in relation to the Plaintiffs.

## JURISDICTION

15.     This action arises under the Constitution and laws of the United States.  Jurisdiction is conferred on this Court pursuant to Article III, the Supremacy Clause, 28 U.S.C. § 1331, and 50 U.S.C.A. § 3912.

16.     This Court also has Article III jurisdiction because the damages and practices subject to this action involve actual damages and losses caused by illegal or unfair judgments entered in Maryland court proceedings---actions which are in fact unenforceable as a matter of Federal and State law.

17.     The common law has long recognized such jurisdiction of the Courts in these situations.  *See e.g.* Blackstone, (1 W. Blackstone, Commentaries, Introduction, Sect. III Laws of England, p. 70 and Book 1, Rights of Individuals Pages 123-124) (available at http://avalon.law.yale.edu/subject_menus/blackstone.asp)(last visited February 27, 2023); *The Marshalsea*, 10 Co. Rep. 68b, 77 Eng. Rep. 1027 (K.B. 1613)(the judgment of a court without jurisdiction is null and void); *Harrison v. Burwell*, 2 Ventr. 9, 86 Eng. Rep. 278 (K.B. 1670) (writ lies to prevent erroneous dissolution of valid marriage).

18.     By ratifying the Constitution of the United States and becoming the seventh state to do so on April 28, 1788, the State of Maryland yielded its sovereignty to yield to the national

power of the United States to raise and support the Armed Forces.  As a result, "Congress may legislate at the expense of traditional state sovereignty to raise and support the Armed Forces." *Torres v. Texas Dep't of Pub. Safety*, 142 S. Ct. 2455, 2465 (2022).  This waiver of sovereignty by the State of Maryland is not limited to times of war.  *Id.*  Consequently, the State of Maryland "waived [its] immunity under Congress' Article I power '[t]o raise and support Armies' and 'provide and maintain a Navy.'"  *Id.  Cf.* 50 U.S.C.A. § 3902.

19.    In addition, it has long been recognized that this Court also has jurisdiction over controversies for claims related to prospective declaratory and injunctive relief involving the State of Maryland as well—especially when required to enforce Constitutional and Federal law protections like those at issue in this case.  *See e.g. Ex parte Young*, 209 U.S. 123 (1908); *Antrican v. Odom*, 290 F.3d 178, 191 (4th Cir. 2002).

20.    Also, the State of Maryland has consented to this action by its own constitutional protections.  *See e.g.* MD. CONST. DECL. OF RTS. ART. 19 ("That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the Land"). *See also* MD. CONST. DECL. OF RTS. ART. 2. Md. Decl. of Rts. art. 2 (recognizing that Federal laws are "the Supreme Law of the State").  The SCRA is one of the laws of the land and the State of Maryland cannot claim immunity from the SCRA when by its own constitution it protects the remedies of Plaintiffs established by the SCRA.

21.    This Court has supplemental jurisdiction over the State claims alleged in this Complaint under 28 U.S.C. § 1367, as such claims form a part of the same case or controversy.

22.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

23.     Declaratory and injunctive relief is also available for the relief requested herein pursuant to 28 U.S.C. §§ 2201 and 2202 as well as 50 U.S.C.A. § 4042(a).  *See also LVNV Funding LLC v. Finch*, 207 A.3d 202 (Md. 2019).

## PARTIES

24.     Plaintiffs Latasha Rouse and Exabia Rouse ("Mr. & Mrs. Rouse") are residents of the State of Hawaii.  At all relevant times during the occurrence subject to this action:

    a.  Mr. & Mrs. Rouse were persons subject to the protections of the SCRA as Mrs. Rouse is an active-duty servicemember (as that term is defined by 50 U.S.C.A. § 3911(1)) and her husband was a qualified dependent (as that term is defined by 50 U.S.C.A. § 3911(4));

    b.  Before they were wrongfully pursued by LeMay as described herein, Mr. & Mrs. Rouse had no contacts with the State of Maryland, did not do business in the State of Maryland, and owned no real or intangible property in the State of Maryland; and

    c.  Mr. & Mrs. Rouse were consumers entitled to the protections of the Maryland Consumer Protection Act ("MCPA"), COM. LAW § 13-101, *et seq.* which incorporates the SCRA.

25.     Plaintiffs Daniel and Jessica Riley ("Mr. & Mrs. Riley") are residents of the State of North Carolina.  At all relevant times during the occurrence subject to this action:

  a. Mr. & Mrs. Riley were persons subject to the protections of the SCRA as Mr. Riley is a servicemember (as that term is defined by 50 U.S.C.A. § 3911(1)) and on active-duty and his wife Mrs. Riley is a qualified dependent (as that term is defined by 50 U.S.C.A. § 3911(4));

  b. Before they were wrongfully pursued by LeMay as described herein, Mr. & Mrs. Riley had no contacts with the State of Maryland, did not do business in the State of Maryland, and owned no real or intangible property in the State of Maryland; and

  c. Mr. & Mrs. Riley were consumers entitled to the protections of the MCPA which incorporates the SCRA.

26. Plaintiffs Oscar Davines and Sherryl Davines ("Mr. & Mrs. Davines") are currently residents of the State of Hawaii.  At all relevant times during the occurrence subject to this action:

  a. Mr. & Mrs. Davines were persons subject to the protections of the SCRA as Mr. Davines is a servicemember (as that term is defined by 50 U.S.C.A. § 3911(1)) and on active-duty and his wife Mrs. Davines is a qualified dependent (as that term is defined by 50 U.S.C.A. § 3911(4));

  b. Before they were wrongfully pursued by LeMay as described herein, Mr. & Mrs. Davines had no contacts with the State of Maryland, did not do business in the State of Maryland, and owned no real or intangible property in the State of Maryland;

c.   Mr. & Mrs. Davines were consumers entitled to the protections of the MCPA which incorporates the SCRA.

27.   Defendant Wes Moore, in his official capacity as the currently elected Governor of the State of Maryland, is charged with enforcement of state laws under the Constitution of Maryland Adopted by Convention of 1867 including Maryland's Uniform Enforcement of Foreign Judgments Act, CTS. & JUD. PROC. § 11-801, *et seq.*, CTS. & JUD. PROC. § 3-305, and FIN. INST. § 1-304.  In addition, under Maryland's Constitution, Defendant Moore:

a.   Is "vested" with the "executive power" of the State of Maryland. MD. CONST. ART. II, § 1.

b.   Acts as "the Commander in Chief of the land and naval forces of the State."

c.   Is required to "take care that the Laws are faithfully executed." MD. CONST. ART. II, § 9.

d.   Is required to "inform the Legislature of the condition of the State and recommend to their consideration such measures as he may judge necessary and expedient." MD. CONST. ART. II, § 19.

e.   Appoints judges to Maryland's Appellate Courts including the Court of Appeals.   MD. CONST. ART. IV, § 5A.

f.   Affirmed by his oath of office, pursuant to MD. CONST. ART. I, § 9, requires him to "support the Constitution of the United States [and to] be faithful and bear true allegiance to the State of Maryland, and support the Constitution and Laws thereof" which includes the SCRA and MD. CONST. DECL. OF RTS. ART. 19 and MD. CONST. DECL. OF RTS. ART. 2.

11

28.     Defendant Matthew Fader, in his official capacity as the current Chief Justice of the Supreme Court of Maryland, serves as the "the administrative head of the Judicial system of the State" (MD. CONST. ART. IV, § 18(b)(1)) and "has overall responsibility for the administration of the courts of this State" (MD. RULE 16-102).   In that administrative role, Defendant Fader, on behalf of the State of Maryland's courts, has the administrative role and responsibility to enforce and carryout the provisions Maryland's Uniform Enforcement of Foreign Judgments Act, CTS. & JUD. PROC. § 11-801, *et seq.*, CTS. & JUD. PROC. § 3-305, FIN. INST. § 1-304, and MD. RULE 3-623 that is subject to this action.   In addition, Defendant Fader:

a.  Has "the authority granted by the Maryland Constitution, the Maryland Code, the Maryland Rules, or other law" including the SCRA to serve as "the administrative head of the Maryland judicial system and has the overall responsibility for the administration of the courts of the State."   MD. RULE 16-102(a).

b.  Has the authority, along with the other justices of the Supreme Court of Maryland (including Defendants Steven B. Gould, Brynja M. Booth, Shirley M. Watts, Michele D. Hotten, Jonathan Biran, and Angela M. Eaves in their official capacities), to appoint members of the Rules Committee and to make recommendations to the Rules Committee for changes to the Maryland Rules, and adopt amendments to and new rules of civil procedure that apply to every state court within Maryland.   *See e.g.,* MD. CONST. ART. IV, § 18; CTS. & JUD. PROC. § 13-301; MD. RULE 16-701.

c.  Has the authority to appoint and supervise the Administrator of the Administrative Office of the Courts for management of the judicial system including but not limited to reporting on the business conducted by the courts across the state.  CTS. & JUD. PROC. § 13-101.

29.  Defendants Moore, Fader, Gould, Booth, Watts, Hotten, Biran, and Eaves are sued herein <u>only</u> in their official capacities as the officers of the State of Maryland responsible for carrying out and executing the laws and rules subject to this action and relief sought by the Plaintiffs.

30.  Not named as a party to this Amended Complaint, George LeMay ("LeMay"), individually and d/b/a WEC (Western Education Corp.) is, upon information and belief, a resident of the State of Nevada.  At all relevant times during the occurrence subject to this action:

a.  LeMay was a person and individual subject to the requirements and restrictions of the SCRA at issue in this action in relation to the Plaintiffs.  50 U.S.C.A. § 3931.

b.  LeMay acted as a collector subject to the MCDCA and MCPA.  Even after the commencement of this action LeMay continued to claim without question by the State of Maryland and its various courts that the Plaintiffs owed him sums of money.

c.  In relation to the Plaintiffs LeMay conducted his business in the State of Maryland, as described herein, by using Maryland law, the Maryland courts, and the State of Maryland resources and procedures to wrongfully collect and/or attempt to collect from active-duty servicemembers.  The State of Maryland

permitted him to do so even though:  (i) each collection action under the supervision of the state courts failed to comply with the strict, mandatory requirements of the SCRA as they relate to the securing of judgments and collecting from servicemembers in the State of Maryland; and (ii) the Plaintiffs, who had no connection with Maryland whatsoever, were subjected to the jurisdiction of the State of Maryland's  various state courts which failed to ensure any Due Process protections owed to the Plaintiffs and also subjected to collection activities under the color of law based upon the State of Maryland's laws and procedures.

    d.  LeMay does business as Western Education Corp. ("WEC") and Olympic Publishing Company.

**GENERAL FACTUAL ALLEGATIONS**

31.    LeMay runs a nationwide business from his work location in Las Vegas, NV in which he employs agents and/or employees to sell consumer products door to door on military installations to active-duty military servicemembers and their dependents.

32.    In sworn testimony, under penalties of perjury before the District Court of Maryland for Anne Arundel County, Maryland on October 1, 2021 (Case No. D-07-JG-20-000173), LeMay:

    a.  Explained he filed a purported foreign judgment pursuant to the Foreign Judgments Act in Maryland for the purposes of enforcing it through bank levies because the laws of Texas where the purported judgment came from are not favorable for enforcement.

14

b.  Falsely argued that the purported judgment he presented to the Maryland court pursuant to the Foreign Judgments Act was still valid and registered in Texas (when in fact it was not) when in fact "there was no foreign judgment to enroll" in Maryland.

c.  Admitted he is not a licensed Texas attorney (or has any education background in Texas law) and he is just a Nevada businessman.

d.  Admitted by omission that he never filed any SCRA affidavit in Maryland court proceedings because he falsely believed the Foreign Judgments Act did not require him to do so.

e.  Admitted that he routinely notifies military payroll offices of a servicemember's branch of the military as part of his collection activities (in furtherance of his unfair, deceptive, and abusive collection practices).

33.   LeMay's business model is to engage servicemembers on military installations and have them sign finance contracts for his products which he later uses in the courts to collect, and/or attempts to collect.

34.   Before the commencement of this action LeMay advertised on his website:

Thank you for checking out WEC Group! WEC Group has been serving American Military Families since 1969, Promoting Education in the home through Children's Books, Learning Materials, and Computer Systems. If you have any questions, comments, or suggestions feel free to e-mail me. I hope you've enjoyed the site!

35.   As part of his collection efforts, LeMay obtains invalid judgments from Maryland's sister states and then enrolls them in Maryland pursuant to the Foreign Judgments Act.

36.     In addition to the Plaintiffs' experiences described *infra*, a review of Maryland court records shows Maryland law and procedures have also been used to enroll and attempt to enforce many judgments in direct violation of the SCRA pursuant to the Foreign Judgments Act and the Due Process Clause.  This conclusion is exemplified as follows:

    a.  In a review of more than twenty similar matters in Maryland state courts as those experienced by the Plaintiffs, loopholes in Maryland laws and rules of civil procedure authorized by the Foreign Judgments Act to enroll foreign judgments in Maryland state courts without once providing the mandatory SCRA affidavit required by 50 U.S.C.A. § 3931(b)(1) affidavit.  In doing so, the State of Maryland ignored its mandatory duties under the SCRA in each instance to not permit a judgment to be entered and enforced before knowing if the defendant was entitled to the protections required under the SCRA.

    b.  In a review of more than twenty similar matters in Maryland state courts as those experienced by the Plaintiffs, loopholes in Maryland laws and rules of civil procedure authorized by the Foreign Judgments Act to requests writs of garnishments in Maryland state courts without once providing any SCRA affidavit. In doing so the State of Maryland's laws and rules of procedure permitted judgments of garnishment without the required SCRA affidavit required by 50 U.S.C.A. § 3931(b)(1) prior to the entry of any judgment (*e.g.*, entry of foreign judgment, entry of garnishment judgment, etc.).  In permitting entry of these judgments, the State of Maryland also ignored its mandatory duties under the SCRA in each instance to not permit a judgment to be entered

and enforced before knowing whether the defendant was entitled to the protections required under the SCRA.

c.   In a review of more than twenty similar matters in Maryland state courts as those experienced by the Plaintiffs, the State of Maryland took no steps to comply with the SCRA or even to ensure basic Due Process protections for citizens of other states were met before they were subjected to attempts to seize their property and in fact the acquisition of their property under the color of law based upon the State of Maryland's laws and rules.

37.   In addition, the State of Maryland routinely permitted documents to be filed with the state courts that disclose the personal identifiable information (i.e., social security numbers) of active-duty servicemembers and their dependents without proper redaction.

38.   A summary of the public records reviewed to assert the conclusions in the two preceding paragraphs is attached hereto as **Exhibit B**.

39.   There is an awareness and appreciation of the requirements of the SCRA by some judges of the District Court of Maryland and the Defendants that over time any prior representation of whether a defendant subject to any civil action was on active duty might have become stale and need to be updated.  However, notwithstanding this awareness, the State of Maryland fails to protect servicemembers subjected to enrollment of purported foreign judgments and related collection and never requires compliance with the SCRA in those situations.  Rather, the State of Maryland assumes erroneously and incorrectly that it must give full faith and credit to such foreign judgments notwithstanding the requirements of the SCRA or that the purported judgments are void and unenforceable.

40.     In addition, as a matter of public policy, the Maryland General Assembly recently determined that any violation of the SCRA is a *per se* violation of the MCPA.    FINANCIAL CONSUMER PROTECTION ACT OF 2018, 2018 Maryland Laws Ch. 731 (H.B. 1634).  This enactment also demonstrates the State of Maryland's awareness of the remedial purposes of the SCRA.

41.     The State of Maryland has adopted the Foreign Judgments Act.

42.     Maryland's Foreign Judgments Act does not require a party seeking to enroll or file a foreign judgment in a Maryland court to provide any evidence to the receiving court that the defendant is not an active-duty servicemember as required by 50 U.S.C.A. § 3931(b)(1) before the filing is of record.  MD. RULE 3-623 also does not require a party seeking to enroll or file a foreign judgment in a Maryland court to provide any evidence to the receiving court that the defendant is not an active-duty servicemember as required by 50 U.S.C.A. § 3931(b)(1) before the filing is of record.  The Maryland's Foreign Judgments Act and MD. RULE 3-623 also does not ensure and protect the basic Due Process rights of non-residents subjected to subsequent collection activities related to the enrollment of purported judgments facilitated by the various state courts in the State of Maryland – a protection which is owed since the non-residents and Plaintiffs here have no contacts within the State.

43.     Instead, as shown *infra*, Maryland's Foreign Judgments Act and MD. RULES 3-632 and 3-623 place the unfair burden on active-duty servicemembers and others with no contacts whatsoever in Maryland to object to the filed or enrolled judgment—even when they are on active-duty.  CTS. & JUD. PROC. § 11-802(b); MD. RULE 3-632(b).

44.     The State of Maryland has the burden to protect non-residents and to ensure basic Due Process protections to the Plaintiffs and others like them with non-contacts with the State of Maryland before making them subject to court proceedings in the state.  Shifting of the burden by the State of Maryland is more unfair in this case since the servicemember Plaintiffs have no connection with the State of Maryland and their basic protections under the Due Process Clause of the Fourteenth Amendment were being violated.

45.     The State of Maryland also has enacted laws and rules of procedure permitting a judgment creditor to obtain a Writ of Garnishment and Judgment of Garnishment to collect on its money judgment unless, and until, the judgment debtor seeks to exempt the judgment sum.  *See e.g.*, CTS. & JUD. PROC. § 3-305; MD. RULE 3-645; MD. RULE 3-645.1; MD. RULE 3-646; MD. RULE 2-645; MD. RULE 2-645.1; and MD. RULE 2-646.

46.     Maryland law does not require a party seeking to obtain a Judgment of Garnishment pursuant to CTS. & JUD. PROC. § 3-305, MD. RULE 3-645, MD. RULE 3-645.1, MD. RULE 3-646, MD. RULE 2-645, MD. RULE 2-645.1, and MD. RULE 2-646 to provide any evidence that the judgment debtor/defendant is not an active-duty servicemember as required by 50 U.S.C.A. § 3931(b).

47.     Under Maryland's confidential financial records law, "[a] subpoena means a subpoena, summons, warrant, or court order that appears on its face to have been issued on lawful authority."  FIN. INST. § 1-304(a).  In addition, a Maryland subpoena may be used pursuant to FIN. INST. § 1-304(a) *only* with a proper FIN. INST. § 1-304(b) certification.

48.     Maryland's confidential financial records law does not require the person obtaining and using a subpoena pursuant to FIN. INST. § 1-304(a), MD. RULE 3-510, or MD. RULE 2-510 to

provide any evidence to the issuing court, as part of a collection action, that the defendant is not

an active-duty servicemember as required by 50 U.S.C.A. § 3931(b).

49.     Under the SCRA, "judgment" is defined broadly to "mean[] **any** judgment, decree,

order, or ruling, final or temporary."  50 U.S.C.A. § 3911(9)(emphasis added).

50.     Pursuant to 50 U.S.C.A. § 3911(9), (i) a purported foreign judgment received and/or

enrolled in Maryland pursuant to the Foreign Judgments Act or MD. RULE 3-623, (ii) a Judgment

of Garnishment granted pursuant to CTS. & JUD. PROC. § 3-305, MD. RULE 3-645, MD. RULE 3-

645.1, MD. RULE 3-646, MD. RULE 2-645, MD. RULE 2-645.1, and MD. RULE 2-646; and (iii) a

subpoena issued pursuant to FIN. INST. § 1-304(a) or MD. RULE 3-510, or MD. RULE 2-510 for a

judgment creditor's collection efforts, are "judgments" subject to the mandatory requirements of

the SCRA.

51.     Notwithstanding the broad remedial purposes of the SCRA, the State of Maryland's

laws and procedures permitted the conduct against the Plaintiffs complained of in this action and

failed to require compliance with the SCRA, to use Maryland state courts for activities in relation

to the Plaintiffs.  Maryland law unfairly places the burden on active-duty servicemembers to

contest improper collection conduct when the State of Maryland's laws and procedures failed in

the first instance to follow the strict requirements of the SCRA and the Due Process Clause of the

Fourteenth Amendment.

52.     Maryland law and procedures are preempted by the SCRA and the Due Process

Clause for the purposes of protecting Plaintiffs and other active-duty servicemembers and non-

residents from collectors; Maryland's laws and procedures should be declared to be in violation of

the SCRA and the Due Process Clause and an injunction should be issued by the Court to require

the State of Maryland to correct its laws and rules of procedure to close the loopholes exploited by LeMay with active-duty servicemembers and also non-residents.  Maryland's laws and procedures should not be permitted to aid and abet actors who prey upon active-duty service members in violation of the SCRA, the Due Process Clause, and debt collection statutes in the State of Maryland.

### FACTUAL ALLEGATIONS RELATED TO MR. & MRS. ROUSE

53.     Mr. & Mrs. Rouse were sued by LeMay in the State of Nevada where he obtained a judgment against them based upon a purported contract for consumer goods entered into in the State of Hawaii.  The purported contract was unenforceable as a matter of law.  HAW. REV. STAT. ANN. § 481C-4(b).

54.     Mr. & Mrs. Rouse had also timely canceled, under Hawaiian law, the purported contract with LeMay for consumer goods as "consumer goods" is defined by Hawaiian law.

55.     Mr. & Mrs. Rouse had no contacts with the State of Nevada, owned no property in the State of Nevada, and conducted no business in the State of Nevada at all times relevant to this action and the activities described herein.

56.     At all relevant times herein, Mrs. Rouse has been an active-duty servicemember with the United States Army.

57.     Notwithstanding that he had no legal right to sue Mr. & Mrs. Rouse in Nevada, LeMay did so on the basis of his purported contract which was unenforceable under Hawaii law where the contract had purportedly been made.  HAW. REV. STAT. ANN. § 481C-4(b).

58.     Judgment was entered against Mr. & Mrs. Rouse on the unenforceable contract in Nevada by the Justice Court, Las Vegas Township in Clark County, Nevada where the state court

had no personal jurisdiction over Mr. & Mrs. Rouse pursuant to the Due Process Clause of the Fourteenth Amendment.

59.     The judgment obtained by LeMay in Nevada was also in violation of the SCRA since it was obtained it in violation of 50 U.S.C.A. § 3931(b).

60.     LeMay's lawsuit in Nevada was an attempt to collect a consumer debt from an active-duty member of the Armed Forces.

61.     Except for the proceedings described *infra*, Mr. & Mrs. Rouse had no contacts with the State of Maryland, conducted no business in the State of Maryland, and owned no property in the State of Maryland prior to LeMay requesting the enrollment of the unenforceable Nevada judgment in Maryland under the Foreign Judgments Act.

62.      On June 21, 2021, LeMay filed a request to File Foreign Judgment pursuant to the Foreign Judgments Act and MD. RULES with the District Court of Maryland for Garrett County (Case No. D-122-JG-21-000018) which was dated June 17, 2021.  LeMay did not include with his request to file the Nevada judgment the required affidavit pursuant to 50 U.S.C.A. § 3931(b). The State of Maryland permitted Lemay's request without the required affidavit in violation of 50 U.S.C.A. § 3931(b).

63.     LeMay's June 21, 2021 filing was an attempt to collect an alleged consumer debt from an active-duty member of the Armed Forces.

64.     Notwithstanding that LeMay's request did not include the mandatory 50 U.S.C.A. § 3931(b) affidavit and the fact that Mr. & Mrs. Rouse were protected persons under the SCRA and had no contacts with Garrett County or the State of Maryland, the District Court of Maryland for Garrett County recorded and enrolled the Nevada judgment against Mr. & Mrs. Rouse.  The

State of Maryland's statutes and rules which permitted the enrollment failed to consider and protect Mr. & Mrs. Rouse's basic Due Process rights.

65.     In a notice dated June 21, 2021, the District Court of Maryland for Garrett County improperly shifted the burden to Mr. & Mrs. Rouse to contest the improperly recorded judgment that did not include the mandatory 50 U.S.C.A. § 3931(b) affidavit even though Mrs. Rouse was on active-duty.   The state court gave Mr. & Mrs. Rouse thirty days to contest the recorded judgment.

66.      Before LeMay's unlawful activities described herein, Mr. & Mrs. Rouse had no contacts with the State of Maryland or Garrett County, conducted no business in the State of Maryland or Garrett County, and owned no property in the State of Maryland or Garrett County.

67.     Just eight days after the State of Maryland's statutes and rules permitted LeMay to record and enroll the Nevada judgment against Mr. & Mrs. Rouse, and before the deadline established for Mr. & Mrs. Rouse to contest the judgment pursuant to those same rules and procedures, LeMay filed on June 29, 2021, pursuant to CTS. & JUD. PROC. § 3-305 and MD. RULES, a request for Writ of Garnishment in the District Court of Maryland for Garrett County (Case No. D-122-JG-21-000018) that was dated June 24, 2021 to seize Mr. & Mrs. Rouse's accounts.  LeMay did not include with his request for levy the required affidavit, in violation of 50 U.S.C.A. § 3931(b).  LeMay also filed with his request for levy personal, confidential, and identifiable information for Mr. & Mrs. Rouse without the right to do so in the public records and without proper redactions.

68.     LeMay's June 29, 2021 filing was an attempt to collect an alleged consumer debt from an active-duty member of the Armed Forces and was in violation of both the SCRA and MCPA.

69.     The District Court of Maryland for Garrett County accepted LeMay's June 29, 2021 request for garnishment pursuant to CTS. & JUD. PROC. § 3-305 and the MD. RULES made without proper redactions and despite the obvious and improper disclosure of social security numbers and which also did not include the mandatory 50 U.S.C.A. § 3931(b) affidavit even despite the fact that Mrs. Rouse was on active-duty.  Pursuant to CTS. & JUD. PROC. § 3-305, the MD. RULES, and in violation of the mandatory requirements of the SCRA, the state court also issued LeMay's requested garnishment to Mr. & Mrs. Rouse's bank which froze their accounts.

70.     The State of Maryland's statutes and rules at issue in this action wrongfully permitted (i) the enrollment and recording of the unenforceable Nevada judgment and (ii) the issuance of the garnishment of Mr. & Mrs. Rouse's account(s) before they had entered any appearance in the proceedings.  Even when Mr. & Mrs. Rouse did later voluntarily appear *pro se* and notified the District Court of Maryland for Garrett County that the actions were in violation of the SCRA, the State of Maryland's statutes and rules of procedure do not adequately allow for the State of Maryland to correct its violations of the State's mandatory duties under the SCRA and Mr. & Mrs. Rouse.

71.     The State of Maryland was required under the SCRA pursuant to 50 U.S.C.A. § 3931(b)(2) to appoint counsel on behalf of Mr. & Mrs. Rouse before it permitted the recording and enrollment of the Nevada judgment against Mr. & Mrs. Rouse and/or also issued LeMay's requested garnishment, but it failed to do so.  Instead, at their own expense of time and money,

24

Mr. & Mrs. Rouse were required to incur costs to obtain counsel to defend their rights before the District Court of Maryland for Garrett County.

72.     Had the State of Maryland's laws and procedures subject to this action required LeMay to present the mandatory affidavit and evidence required by 50 U.S.C.A. § 3931(b)(1) <u>before</u> also allowing (i) LeMay to enroll and record his unenforceable judgment, and (ii)  LeMay to obtain writs of garnishment for Mr. & Mrs. Rouse's property, it would have known that Mr. & Mrs. Rouse were protected under the SCRA.  By failing to comply with this basic requirement of the SCRA, the State of Maryland's laws and procedures wrongfully avoid the rights and protections Mr. & Mrs. Rouse were entitled pursuant to 50 U.S.C.A. § 3931(b)(2) as intended by Congress in the SCRA before permitting such actions.

73.     Had the State of Maryland had performed its mandatory duty on 50 U.S.C.A. § 3931(b)(2), Mr. & Mrs. Rouse would also not have sustained the damages and losses sought herein because any appointed counsel would have investigated the underlying facts and learned LeMay had no right to pursue Mr. & Mrs. Rouse in any court in the State of Maryland under the circumstances, and would have filed the appropriate papers to contest LeMay's claims before the damages and losses occurred.

74.     As a direct and proximate result of the State of Maryland's failure to protect Mr. & Mrs. Rouse's rights under Federal law and the U.S. Constitution, Mr. & Mrs. Rouse were subjected to at least 28 days of improper collection conduct (i.e., from June 21, 2021 to July 19, 2021) that otherwise would have not occurred but for the State of Maryland's failure to ensure its laws and procedures complied with the SCRA and Due Process Clause.  In addition, the State of Maryland has taken no steps since being on notice of this action to expunge the public records whatsoever

and instead takes the unfounded position that it is required to give full faith and credit to an unenforceable, void judgment from the State of Nevada which never had jurisdiction over Mr. & Mrs. Rouse.

75.     As a direct and proximate result of the State of Maryland's failure to protect Mr. & Mrs. Rouse's rights under Federal law, the U.S. Constitution, and even Maryland's own laws and the MD. RULES protecting confidential information and other MD. RULES discussed herein, Mr. & Mrs. Rouse sustained damages and losses including the following:

a.   The loss of the use of their monies frozen as a result of the garnishment activities discussed *supra* in violation of the SCRA equal to the sum of approximately $38.63 (i.e., interest from the $1,545.11 frozen in the attempted garnishment).

b.   Damage to reputation as a result of the appearance from the proceedings permitted by the State of Maryland that created the false, negative impression that Mr. & Mrs. Rouse were financially irresponsible and owed monies not lawfully owed.  This damage resulted in repeated inquiries from Mrs. Rouse's First Sergeant over and over about the matters here in Maryland that would never have occurred but for the State of Maryland's failure to follow the SCRA or ensure basic Due Process Protections owed to non-residents with no contacts with Maryland.

c.   They sustained emotional distress manifested by embarrassment, frustration, increased anxiety and depression (which were preexisting conditions), sleepless nights and insomnia which escalated, tearful emotions while waking up to find

out their account had been frozen because of the garnishment allowed by the State of Maryland's rules and procedures without consideration of Mr. & Mrs. Rouse's Due Process and SCRA rights on the morning of their child's birthday, anger and sadness of the created by their children's witnessing the emotional distress, loss of intimacy, etc.  This emotional distress also occurred while Mrs. Rouse was also on active-duty status outside of Maryland.

d.  They sustained and incurred legal fees to oppose the improperly recorded foreign judgment and collection activities discussed *supra* in the amount of $4,616.00.

e.  The public filing of their confidential information with the consent of the State of Maryland creates an opportunity for their identities to be stolen or used for improper purposes.

f.  The public filings of the judgment and collection activities permitted by the State of Maryland's failure to ensure its laws and rules comply with the SCRA and basic Due process also damages Mr. & Mrs. Rouse's credit.  This damage exists since the proceedings have not been expunged and also since the information and data was available during the relevant periods by the State of Maryland to those who acquire for resale on the information market.

g.  Mr. & Mrs. Rouse also entitled to nominal damages from the State of Maryland for the purposes of having to pursue this action to declare and vindicate their SCRA and Due Process rights discussed herein.

h.  They also are entitled to other out of pocket damages and losses.

76.     After the commencement of this action and it was on notice of the facts at issue, the State of Maryland failed to reasonably investigate conduct at issue and has also taken the position that it is not required to comply with its requirements under the SCRA and the Due Process Clause.  Therefore, a controversy continues between Mr. & Mrs. Rouse and the State of Maryland continues since the State of Maryland's position is that it does not have to comply with remedial protections of the SCRA or basic Due Process protections owed to non-residents being subjected to court proceedings in State of Maryland's courts.   In addition, while Mr. & Mrs. Rouse have sought and acted to mitigate some of the damages incurred, the State of Maryland has elected to not reasonably do so.

### FACTUAL ALLEGATIONS RELATED TO MR. & MRS. RILEY

77.     Mr. & Mrs. Riley were sued by LeMay in the State of Texas where he originally obtained a judgment against them based upon a purported contract for consumer goods entered into in the State of Texas.

78.     LeMay's Texas lawsuit was an attempt to collect an alleged consumer debt from an active-duty member of the Armed Forces.

79.     Mr. & Mrs. Riley obtained legal counsel in Texas and timely appealed the original judgment.

80.     By virtue of Mr. & Mrs. Riley's timely appeal of the original judgment, its effect and enforceability was *vacated* as a matter of Texas law.

81.     After some proceedings during the appeal, including an initial judgment affirming the original judgment which was later vacated, the County Court of Law for Bell County, Texas

dismissed LeMay's action against Mr. & Mrs. Riley (Cause No. 89807) on March 2, 2020 "for want of prosecution *with prejudice* to refiling" (emphasis added).

82.     The March 2, 2020 judgment constitutes a judgment on the merits as to LeMay's purported claims against Mr. & Mrs. Riley.  *See e.g.*, *Cash Acapulco S.A. DE C.V , v. Cardtronics Mexico, S.A. DE C.V. and Cardtronics, Inc.,* 2019 WL 12059020 (Tex. Dist.)("A plaintiff has a duty to prosecute its suit to a conclusion 'with reasonable diligence,' failing which a trial court may dismiss for want of prosecution.") (quoting *In re Conner*, 458 S.W.3d 532, 534 (Tex. 2015)). Dismissal for want of prosecution may be obtained by action of the trial court or upon a motion by any party to the suit. *Dueitt v. Arrowhead Lakes Prop. Owners, Inc.*, 180 S.W.3d 733, 738 (Tex. App.--Waco 2005, pet. denied) (citations omitted).  A court may dismiss for want of prosecution or under its inherent power or Texas Rule of Civil Procedure 165(a). *Villarreal v. San Antonio Truck & Equip.*, 994 S.W.2d 628, 630 (Tex. 1999)(collecting other cases for same holdings); *Klingenschmitt v. Weinstein*, 342 S.W.3d 131, 134 (Tex. App. 2011)("A dismissal with prejudice is an adjudication on the merits. *Love v. Moreland,* 280 S.W.3d 334, 338 (Tex.App.-Amarillo 2008, no pet.; determination on the merits. *Ritchey v. Vasquez,* 986 S.W.2d 611, 612 (Tex.1999)"); *Mossler v. Shields*, 818 S.W.2d 752, 754 (Tex. 1991)("it is well established that a dismissal with prejudice functions as a final determination on the merits. *Zimmerman v. Texaco, Inc.,*409 S.W.2d 607, 614 (Tex.Civ.App.—El Paso 1966, writ ref'd n.r.e.)").

83.     LeMay took no timely appeal from the March 2, 2020 final judgment against him by the Texas state court.  At that point, LeMay had no valid judgment against Mr. & Mrs. Riley and no legal method of again suing Mr. and Mrs. Riley in any state or federal court on the purported consumer debt.

84.     Except for the proceedings described *infra*, Mr. & Mrs. Riley had no contacts with the State of Maryland, conducted no business in the State of Maryland, and owned no property in the State of Maryland prior to LeMay requesting the enrollment of the non-existent Texas judgment in Maryland under the Foreign Judgments Act.

85.     At all relevant times herein, Mr. Riley has been an active-duty service member with the United States Army.

86.     Specifically, on August 12, 2020 LeMay filed, pursuant to the Foreign Judgments Act and MD. RULES, a request to File Foreign Judgment with the District Court of Maryland for Anne Arundel County (Case No. D-07-JG-20-000173) which was dated July 29, 2020.

87.     LeMay's August 12, 2020 filing was an attempt to collect an alleged consumer debt from an active-duty servicemember of the Armed Forces.

88.     LeMay's request to file a foreign judgment did not include the required affidavit in violation of 50 U.S.C.A. § 3931(b).

89.     Notwithstanding that LeMay's request did not include the mandatory 50 U.S.C.A. § 3931(b) affidavit, the fact that Mr. & Mrs. Riley were protected persons under the SCRA, conducted no business in Maryland, had no property in Maryland, and had no contacts with Maryland or Anne Arundel County, the District Court of Maryland for Anne Arundel County permitted LeMay to enroll and record a bogus Texas judgment against Mr. & Mrs. Riley pursuant to the Foreign Judgments Act and MD. RULES.

90.     In a notice dated August 12, 2020, the District Court of Maryland for Anne Arundel County improperly shifted the burden to Mr. & Mrs. Riley to contest the improperly enrolled and recorded judgment that did not include the mandatory 50 U.S.C.A. § 3931(b) affidavit even though

Mr. Riley was on active-duty.   The state court gave Mr. & Mrs. Riley thirty days to contest the recorded judgment.

91.     On September 24, 2020, LeMay filed a request for Writ of Garnishment, pursuant to CTS. & JUD. PROC. § 3-305 and the MD. RULES, in the District Court of Maryland for Anne Arundel County (Case No. D-122-JG-21-000173), which was dated September 17, 2020, to seize Mr. & Mrs. Riley's accounts.

92.     LeMay's September 24, 2020 filing was an attempt to collect an alleged consumer debt from an active-duty servicemember of the Armed Forces.

93.     LeMay did not include with his first request for garnishment the required affidavit in violation of 50 U.S.C.A. § 3931(b).  LeMay also filed with his first request for garnishment personal, confidential, identifiable information for Mr. & Mrs. Riley without the right to do so in the public records and without proper redactions.

94.     LeMay's September 24, 2020 request for Writ of Garnishment in the District Court of Maryland for Anne Arundel County (Case No. D-122-JG-21-000173) sought sums not owed and which could not be recovered in any state or federal court.

95.     Pursuant to pursuant to CTS. & JUD. PROC. § 3-305 and the MD. RULES, the District Court of Maryland for Anne Arundel, County accepted LeMay's September 24, 2020 request for garnishment made without proper redactions and which also did not include the mandatory 50 U.S.C.A. § 3931(b) affidavit even though Mr. Riley was on active-duty.  The state court also issued the requested garnishment pursuant to CTS. & JUD. PROC. § 3-305 and the MD. RULES to Mr. & Mrs. Riley's purported lender.

31

96.     LeMay's service of the garnishment was an attempt to collect an alleged consumer debt from an active-duty member of the Armed Forces.

97.     On January 25, 2021, LeMay filed a second request for Writ of Garnishment District Court of Maryland for Anne Arundel County (Case No. D-122-JG-21-000173), pursuant to CTS. & JUD. PROC. § 3-305 and the MD. RULES, which was dated December 31, 2020, to seize Mr. & Mrs. Riley's accounts.

98.     LeMay's January 25, 2021 filing was an attempt to collect an alleged consumer debt from an active-duty servicemember of the Armed Forces.

99.     LeMay did not include with his January 25, 2021 request for garnishment the required affidavit in violation of 50 U.S.C.A. § 3931(b).  LeMay also filed with his request for garnishment personal, confidential, identifiable information for Mr. & Mrs. Riley without the right to do so in the public records and without proper redactions.

100.    LeMay's January 25, 2021 request for Writ of Garnishment District Court of Maryland for Anne Arundel County (Case No. D-122-JG-21-000173) was seeking sums not actually owed.

101.    The District Court of Maryland for Anne Arundel, County accepted LeMay's January 25, 2021 request for garnishment made without proper redactions and which also did not include the mandatory 50 U.S.C.A. § 3931(b) affidavit even though Mr. Riley was on active-duty. The state court also issued the requested garnishment to Mr. & Mrs. Riley's purported lender in violation of the SCRA pursuant to CTS. & JUD. PROC. § 3-305 and the MD. RULES.

102.    On March 22, 2021, LeMay filed a third request for Writ of Garnishment District Court of Maryland for Anne Arundel County (Case No. D-122-JG-21-000173) which was dated

March 9, 2021 to seize Mr. & Mrs. Riley accounts pursuant to Cts. & Jud. Proc. § 3-305 and the Md. Rules.

103.    LeMay's March 22, 2021 filing was an attempt to collect an alleged consumer debt from an active-duty servicemember of the Armed Forces.

104.    LeMay did not include with his third request for garnishment the required affidavit in violation of 50 U.S.C.A. § 3931(b).  LeMay also filed with his third request for garnishment personal, confidential, identifiable information for Mr. & Mrs. Riley without the right to do so in the public records and without proper redactions.

105.    LeMay's March 22, 2021 request for Writ of Garnishment filed in the District Court of Maryland for Anne Arundel County (Case No. D-122-JG-21-000173) was seeking sums he knew were not owed.

106.    The District Court of Maryland for Anne Arundel, County accepted LeMay's March 9, 2021 request for garnishment made without proper redactions and which also did not include the mandatory 50 U.S.C.A. § 3931(b) affidavit even though Mr. Riley was on active-duty. The state court also issued the requested garnishment to Mr. & Mrs. Riley's purported lender in violation of the SCRA pursuant to Cts. & Jud. Proc. § 3-305 and the Md. Rules.

107.    On or about May 12, 2021 through June 10, 2021, LeMay requested the District Court of Maryland for Anne Arundel, County issue a subpoena to him to conduct discovery from an out-of-state entity known as SST/Pioneer of Mr. & Mrs. Riley's confidential, financial information.

108.    LeMay's May-June 2021 request for the court to issue a subpoena was an attempt to collect a consumer debt from an active-duty member of the Armed Forces.

109.   LeMay did not include with his request for subpoena the required affidavit in violation of 50 U.S.C.A. § 3931(b) and the court did not verify the mandatory FIN. INST. § 1-304 certification.

110.   The District Court of Maryland for Anne Arundel, County accepted LeMay's request for a subpoena to SST/Pioneer which did not include the mandatory 50 U.S.C.A. § 3931(b) affidavit even though Mr. Riley was on active-duty and therefore the subpoena was issued in violation of the SCRA.  The state court also issued the requested subpoena to SST/Pioneer even though the entity is not subject to a Maryland subpoena.

111.   LeMay's requested subpoena from the District Court of Maryland for Anne Arundel County (Case No. D-122-JG-21-000173) to SST/Pioneer sought confidential, information he knew he was not entitled to and based upon an unverified FIN. INST. § 1-304 certification.

112.   On or about May 12, 2021 through June 10, 2021, LeMay also requested the District Court of Maryland for Anne Arundel, County to issue another subpoena to him to conduct discovery from an auto finance institution for Mr. & Mrs. Riley's confidential, financial information.

113.   LeMay's May 12, 2021 filing was an attempt to collect an alleged consumer debt from an active-duty servicemember of the Armed Forces.

114.   LeMay failed to give notice to Mr. & Mrs. Riley of this second subpoena as required by FIN. INST. § 1-304 and the MD. RULES.  LeMay did not include with his request for subpoena the required affidavit in violation of 50 U.S.C.A. § 3931(b).

115.   The District Court of Maryland for Anne Arundel, County accepted LeMay's request for a subpoena to the auto finance institution, which did not include the mandatory 50

34

U.S.C.A. § 3931(b) affidavit even while Mr. Riley was on active-duty, and issued a subpoena in violation of the SCRA.

116.    LeMay's requested subpoena from the District Court of Maryland for Anne Arundel County (Case No. D-122-JG-21-000173) sought confidential information he knew he was not entitled and his false certification under FIN. INST. § 1-304.

117.    On June 30, 2021, LeMay filed another request for Writ of Garnishment District Court of Maryland for Anne Arundel County (Case No. D-122-JG-21-000173) which was dated June 21, 2021 to seize Mr. & Mrs. Riley accounts.  LeMay did not include with his request for garnishment the required affidavit in violation of 50 U.S.C.A. § 3931(b).

118.    LeMay's June 21, 2021 request for Writ of Garnishment District Court of Maryland for Anne Arundel County (Case No. D-122-JG-21-000173) was seeking sums he knew were not owed.

119.    The District Court of Maryland for Anne Arundel, County accepted LeMay's June 21, 2021 request for garnishment made without the mandatory 50 U.S.C.A. § 3931(b) affidavit even while Mr. Riley was on active-duty service member.  The state court also issued the requested garnishment pursuant to CTS. & JUD. PROC. § 3-305 to MD. RULES to Mr. & Mrs. Riley's lender which froze their account(s) even though the garnishment request was made in violation of the SCRA.

120.    The State of Maryland's statutes and rules at issue in this action wrongfully permitted (i) the enrollment and recording of vacated and void Texas judgment, (ii) the issuance of multiple garnishments of Mr. & Mrs. Riley's account(s) before they had entered any appearance in the proceedings, and (iii) the issuance of subpoenas for Mr. & Mrs. Riley's confidential financial

records. Even when Mr. & Mrs. Riley did later voluntarily appear *pro se* and notified the District Court of Maryland for Anne Arundel County that the actions of some facts which would have triggered the possibility that the SCRA protections applied to the situation, the State of Maryland's statutes and rules of procedure do not adequately allow for the State of Maryland to correct its violations of the State's mandatory duties under the SCRA and Mr. & Mrs. Riley.

121.    As a direct and proximate result of the State of Maryland's statutory and procedural laws which fail to follow the requirements of the SCRA discussed herein, Mr. & Mrs. Riley had to engage legal counsel to protect their rights which manifested itself in a contested state court hearing on October 1, 2021.

122.    At that hearing before the District Court of Maryland for Anne Arundel County (Case No. D-122-JG-21-000173) on October 1, 2021 it was held LeMay had no valid judgment and no right to collect from Mr. & Mrs. Riley. At the hearing LeMay was advised of his appeal rights as well but he has taken no appeal (timely or otherwise).

123.    The State of Maryland was required under the SCRA pursuant to 50 U.S.C.A. § 3931(b)(2) to appoint counsel on behalf of Mr. & Mrs. Riley <u>before</u> it: (i) permitted the recording and enrollment of the vacated judgment against Mr. & Mrs. Riley, (ii) issued LeMay's requested garnishments, and/or (iii) issued the subpoenas permitting LeMay to obtain Mr. & Mrs. Riley's records from various financial institutions; but it failed to do so. Instead, at their own expense of time and money, Mr. & Mrs. Riley were required to incur costs to obtain counsel to defend their rights before the District Court of Maryland for Anne Arundel County.

124.    Had the State of Maryland's laws and procedures subject to this action required LeMay to present the mandatory affidavit and evidence required by 50 U.S.C.A. § 3931(b)(1)

before also allowing: (i) LeMay to enroll and record his vacated judgment, (ii) LeMay to obtain writs of garnishment, and (iii) LeMay to obtain subpoenas for Mr. & Mrs. Riley's financial information, it would have known that Mr. & Mrs. Riley were protected under the SCRA. By failing to comply with this basic requirement of the SCRA, the State of Maryland's laws and procedures wrongfully avoid the rights and protections Mr. & Mrs. Riley were entitled pursuant to 50 U.S.C.A. § 3931(b)(2) as intended by Congress in the SCRA before permitting such actions.

125.    Had the State of Maryland performed its mandatory duty on 50 U.S.C.A. § 3931(b)(2), Mr. & Mrs. Riley also would not have sustained the damages and losses sought herein because any appointed counsel would have investigated the underlying facts and learned LeMay had no right to pursue Mr. & Mrs. Riley in any court in the State of Maryland under the circumstances and filed the appropriate papers to contest LeMay's claims before the damages and losses occurred.

126.    As a direct and proximate result of the State of Maryland's failure to protect Mr. & Mrs. Riley's rights under Federal law and the U.S. Constitution, Mr. & Mrs. Rouse were subjected to at least 415 days of improper collection conduct (i.e., from August 12, 2020 to October 1, 2021) that otherwise would have not occurred but for the State of Maryland's failure to ensure its laws and procedures complied with the SCRA and Due Process Clause. In addition, the State of Maryland has taken no steps since being on notice of this action to expunge the public records whatsoever and instead takes the unfounded position that it is required to give full faith and credit to an unenforceable, non-final bogus judgment which was vacated from the State of Texas.

127.    As a direct and proximate result of the State of Maryland's failure to protect their rights under Federal law and the Constitution and even Maryland's laws protecting confidential

information and the MD. RULES, Mr. & Mrs. Riley sustained damages and losses including the following:

    a.  The loss of the use of their monies frozen as a result of the garnishment activities discussed *supra* in violation of the SCRA equal to the sum of approximately $34.90 (i,e. interest from the $1,047.12 frozen in the attempted garnishment).

    b.  Damage to reputation as a result of the appearance from the proceedings permitted by the State of Maryland that created the false impression that Mr. & Mrs. Riley were financially irresponsible and owed monies not lawfully owed. This damage interfered with the views of Mr. Riley's commander of him and also with Mr. Riley's security clearance about the matters here in Maryland that would never have occurred but for the State of Maryland's failure to follow the SCRA or ensure basic Due Process Protections owed to non-residents with no contacts with Maryland.

    c.  They sustained emotional distress manifested by extreme anxiety, fright, frustration, and worry by having their accounts frozen and/or threatened by garnishment proceedings permitted by the State of Maryland's laws and procedures which fail to following the SCRA and basic Due Process since Mr. & Mrs. Riley have limited means and need their monies to care for their four young children.  In addition, Mr. & Mrs. Riley had difficultly focusing on normal routines when the State of Maryland's laws and rules were permitting their limited assets to be at risk. They were also angry that the State of

Maryland's law and procedures allowed the improper collection activities to continue for so long based upon an invalid judgment and without any consideration of their SCRA and Due Process rights. Mr. & Mrs. Riley were also embarrassed having to try explaining the situation created by the State of Maryland's failures since no reasonable person would believe the state would ignore its duties and responsibilities under the SCRA like the State of Maryland's laws and procedures did.  Other physical manifestations of Mr. & Mrs. Riley's emotional stressed caused by the State of Maryland's failure to follow the SCRA and their basic Due Process rights includes loss of sleep, depression, and exacerbation of a preexisting thyroid condition as a result of the stress.  This emotional distress also occurred while Mr. Riley was also on active-duty status outside of Maryland.

d.  The public filings of the judgment and collection activities permitted by the State of Maryland's failure to ensure its laws and rules comply with the SCRA and basic Due Process also damages Mr. & Mrs. Riley's credit.  This damage exists since the proceedings have not been expunged and also since the information and data was available during the relevant periods by the State of Maryland to those who acquire for resale on the information market.

e.  Mr. & Mrs. Riley are also entitled to nominal damages from the State of Maryland for the purposes of having to pursue this action to declare and vindicate their SCRA and Due Process rights discussed herein.

    f.   They sustained legal fees to oppose the improperly recorded foreign judgment and various collection activities discussed *supra* in the sum of $12,740.00.

    g.   The public filing of their confidential information with the consent of the State of Maryland creates an opportunity for their identities to be stolen or used for improper purposes.   Further, the State of Maryland aided the request to invade their privacy by seeking confidential financial records he was not entitled by failing to follow the mandatory requirements of the SCRA.

    h.   They also are entitled to other out of pocket damages and losses.

128.    After the commencement of this action and it was on notice of the facts at issue, the State of Maryland failed to reasonably investigate conduct at issue and has also taken the position that it is not required to comply with its requirements under the SCRA and the Due Process Clause.  Therefore, a controversy continues between Mr. & Mrs. Riley and the State of Maryland since the State of Maryland's position is that it does not have to comply with remedial protections of the SCRA or basic Due Process protections owed to non-residents subjected to court proceedings in State of Maryland's courts.  In addition, while Mr. & Mrs. Riley have sought and acted to mitigate some of the damages incurred, the State of Maryland has elected to not reasonably do so.

## FACTUAL ALLEGATIONS RELATED TO MR. & MRS. DAVINES

129.    Mr. & Mrs. Davines were sued by LeMay in the State of Texas where he originally obtained a judgment against them based upon a purported contract for consumer goods entered into in the State of Texas.

130.    Mr. & Mrs. Davines obtained legal counsel in Texas and timely appealed the original judgment.

131.    By virtue of Mr. & Mrs. Davines's timely appeal of the original judgment, its effect and enforceability was vacated as a matter of Texas law.

132.    After some proceedings during the appeal, judgment was entered in favor of Mr. & Mrs. Davines and against LeMay on March 2, 2020.

133.    The March 2, 2020 judgment constitutes a judgment on the merits as to LeMay's purported claims against Mr. & Mrs. Davines.  *See e.g.*, *Cash Acapulco S.A. DE C.V.  v. Cardtronics Mexico, S.A. DE C.V. and Cardtronics, Inc.,* 2019 WL 12059020 (Tex.Dist.); *Klingenschmitt v. Weinstein*, 342 S.W.3d 131, 134 (Tex. App. 2011); *Mossler v. Shields*, 818 S.W.2d 752, 754 (Tex. 1991).

134.    LeMay took no timely appeal from the March 2, 2020 against him by the Texas state court.

135.    Except for the proceedings described *infra*, Mr. & Mrs. Davines had no contacts with the State of Maryland, conducted no business in the State of Maryland, and owned no property in the State of Maryland prior to LeMay requesting the enrollment of the non-existent Texas judgment in Maryland under the Foreign Judgments Act.

136.    At all relevant times herein, Mr. Davines has been an active-duty servicemember with the United States Army.

137.    LeMay sought to record and enroll the since vacated Texas judgment in Maryland.

138.    Specifically, on June 30, 2020 pursuant to the Foreign Judgments Act and MD. RULES, LeMay filed a request to File Foreign Judgment with the District Court of Maryland for

Anne Arundel County (Case No. D-07-JG-20-000146) which was dated June 24, 2020.  LeMay filed with his request a copy of the since vacated judgment of the Texas court.

139.    LeMay's request to file a foreign judgment did not include the required affidavit in violation of 50 U.S.C.A. § 3931(b).

140.    Notwithstanding that LeMay's request did not include the mandatory 50 U.S.C.A. § 3931(b) affidavit and the fact that Mr. & Mrs. Davines were protected persons under the SCRA and conducted no business in Maryland, had no property in Maryland, and had no contacts with Maryland or Anne Arundel County, pursuant to the Foreign Judgments Act the District Court of Maryland for Mr. & Mrs. Davines enrolled and recorded the bogus Texas judgment against Mr. & Mrs. Davines.

141.    In a notice dated June 30, 2020, the District Court of Maryland for Anne Arundel County improperly shifted the burden on Mr. & Mrs. Davines to contest the improperly recorded judgment that did not include the mandatory 50 U.S.C.A. § 3931(b) affidavit even through Mr. Davines was on active-duty.   The state court gave Mr. & Mrs. Davines thirty days to contest the recorded judgment.

142.     On March 19, 2021, pursuant to CTS. & JUD. PROC. § 3-305 and the MD. RULES LeMay filed a request for Writ of Garnishment District Court of Maryland for Anne Arundel County (Case No. D-07-JG-20-000146) which was dated January 4, 2021 to seize Mr. & Mrs. Davines' accounts.

143.    LeMay's March 19, 2021 filing was an attempt to collect an alleged consumer debt from an active-duty servicemember of the Armed Forces.

144.   LeMay did not include with his request for garnishment the required affidavit in violation of 50 U.S.C.A. § 3931(b).  LeMay also filed with his request for garnishment personal, confidential identifiable information for Mr. & Mrs. Davines without the right to do so in the public records and without proper redactions.

145.   LeMay's March 19, 2021 request for Writ of Garnishment District Court of Maryland for Anne Arundel County (Case No. D-07-JG-20-000146) sought sums he knew were not owed to him.

146.   In violation of the SCRA, the District Court of Maryland for Anne Arundel County accepted LeMay's March 19, 2021 request for garnishment under the Foreign Judgments Act and Maryland Rules which was made without proper redactions and which did not include the mandatory 50 U.S.C.A. § 3931(b) affidavit even though Mr. Davines was on active-duty.  The state court also issued, pursuant to CTS. & JUD. PROC. § 3-305 and the MD. RULES, the requested garnishment to the Davines' financial institution who froze and seized Mr. & Mrs. Davines' assets when LeMay had no lawful right to them.

147.   On April 23, 2021 LeMay moved for an Order of garnishment Judgment based on his March 19, 2021 request for garnishment but his motion did not include the mandatory 50 U.S.C.A. § 3931(b) affidavit even while Mr. Davines was on active-duty.  LeMay's motion was denied based on a misnomer.

148.   LeMay's April 23, 2021 motion for a judgment on the garnishment was an attempt to collect an alleged consumer debt from an active-duty member of the Armed Forces.

149.   On June 4, 2021 LeMay again moved pursuant to CTS. & JUD. PROC. § 3-305 and MD. RULES for an Order of garnishment Judgment based on his January 4, 2021 request for

garnishment but his motion did not include the mandatory 50 U.S.C.A. § 3931(b) affidavit even through Mr. Davines was on active-duty.  Pursuant to CTS. & JUD. PROC. § 3-305 and MD. RULES and in violation of the SCRA, the District Court of Maryland for Anne Arundel, County granted this motion and issued a garnishment judgment on or about June 7, 2021 even though no 50 U.S.C.A. § 3931(b) affidavit had ever been filed in that case and while Mr. Davines was on active-duty status.

150.    On or about November 9, 2021, LeMay filed pursuant to CTS. & JUD. PROC. § 3-305 and MD. RULES another request for Writ of Garnishment District Court of Maryland for Anne Arundel County (Case No. D-07-JG-20-000146) to seize Mr. & Mrs. Davines' accounts.

151.    LeMay's November 9, 2021 filing was an attempt to collect an alleged consumer debt from an active-duty member of the Armed Forces.

152.    LeMay did not include with his November 9, 2021 request for garnishment the required affidavit in violation of 50 U.S.C.A. § 3931(b). Pursuant to CTS. & JUD. PROC. § 3-305 and the MD. RULES and in violation of the SCRA, the District Court of Maryland for Anne Arundel, County issued a garnishment to Mr. & Mrs. Davines' savings institution even though no 50 U.S.C.A. § 3931(b) affidavit had ever been filed in that case and while Mr. Davines was on active-duty status on or about November 9, 2021.

153.    The State of Maryland's statutes and rules at issue in this action wrongfully permitted (i) the enrollment and recording of vacated and void Texas judgment and (ii) the issuance of multiple garnishments of Mr. & Mrs. Davines' account(s) before they had entered any appearance in the proceedings.

154.    Even though they had no contacts with the State of Maryland and LeMay had no legal rights to pursue them in Maryland, Mr. & Mrs. Davines engaged Maryland counsel to object to the state Court's recent garnishment issued to their lender and to LeMay's continued collection attempts in violation of the SCRA and the Due Process Clause of the Fourteenth Amendment.

155.    By counsel, Mr. & Mrs. Davines appeared in the state court proceeding and entered his appearance on November 24, 2021.  At the same time, Mr. & Mrs. Davines moved to release their property from garnishment and notified their right to exempt the property from garnishment. Mr. & Mrs. Davines also notified the state court of LeMay's violations described herein.

156.    LeMay requested a judgment of garnishment against Mr. & Mrs. Davines from the state court on or about December 21, 2021 without submitting the required SCRA affidavits.

157.    Had the State of Maryland's laws and procedures subject to this action required LeMay to present the mandatory affidavit and evidence required by 50 U.S.C.A. § 3931(b)(1) before also allowing (i) LeMay to enroll and  record his non-final, bogus judgment, (ii)  LeMay to obtain writs of garnishment, and (iii) LeMay seek a judgment of garnishment against Mr. & Mrs. Davines' financial institution, it would have known that Mr. & Mrs. Davines were protected under the SCRA.  By failing to comply with this basic requirement of the SCRA, the State of Maryland's laws and procedures wrongfully avoid the rights and protections Mr. & Mrs. Davines were entitled pursuant to 50 U.S.C.A. § 3931(b)(2) as intended by Congress in the SCRA before permitting such actions.

158.    Had the State of Maryland performed its mandatory duty on 50 U.S.C.A. § 3931(b)(2), Mr. & Mrs. Davines also would not have sustained the damages and losses sought herein because any appointed counsel would have investigated the underlying facts and learned

LeMay had no right to pursue Mr. & Mrs. Davines in any court in the State of Maryland under the circumstances and would have filed the appropriate papers to contest LeMay's claims before the damages and losses occurred.

159.   As a direct and proximate result of the State of Maryland's failure to protect Mr. & Mrs. Davines' rights under Federal law and the U.S. Constitution, Mr. & Mrs. Davines were subjected to at least 945 days of improper collection conduct (i.e., from June 30, 2020 to January 31, 2023) that otherwise would have not occurred but for the State of Maryland's failure to ensure its laws and procedures complied with the SCRA and Due Process Clause.  In addition, the State of Maryland has taken no steps since being on notice of this action to expunge the public records whatsoever and instead takes the unfounded position that it is required to give full faith and credit to an unenforceable, non-final bogus judgment which was vacated from the State of Texas.

160.   As a direct and proximate result of the State of Maryland's laws and procedures permitting the violation of basic privacy laws and also the SCRA and the Due Process Clause of the Fourteenth Amendment, Mr. & Mrs. Davines sustained damages and losses including the following:

> a.  The loss of the use of their monies frozen as a result of the garnishment activities discussed *supra* in violation of the SCRA equal to the sum of approximately $58.28 (i.e., interest from the $1,161.23 frozen in the attempted and actual garnishments).
>
> b.  Damage to reputation as a result of the appearance from the proceedings permitted by the State of Maryland that created the false impression that Mr. & Mrs. Davines were financially irresponsible and owed monies not lawfully

46

owed.  This damage interfered with the views of Mr. Davines' commander of him and also with Mr. Davines' security clearance about the matters here in Maryland that would never have occurred but for the State of Maryland's failure to follow the SCRA or ensure basic Due Process Protections owed to non-residents with no contacts with Maryland.

c.  They sustained emotional distress manifested by socialization withdrawal (from friends and colleagues), depression with low energy and tiredness, loss of consortium, anxiety and inability to feel at ease, financial fears (they sold their second car due to continued threats of garnishments authorized by the State of Maryland without consideration of their SCRA and Due Process rights which also led to family scheduling problems and inconvenience with less avenues of transportation), frustration (even when trying to explain situation to command), helplessness and increased Psoriasis caused by the stress, anger and episodes of short tempers, and also higher blood pressure. This emotional distress also occurred while Mr. Davines was also on active-duty status outside of Maryland.

d.  The public filings of the judgment and collection activities permitted by the State of Maryland's failure to ensure its laws and rules comply with the SCRA and basic Due process also damages Mr. & Mrs. Davines' credit.  This damage exists since the proceedings have not been expunged and also since the information and data was available during the relevant periods by the State of Maryland to those who acquire for resale on the information market.

e.  They sustained legal fees to oppose the improperly recorded foreign judgment and collection activities in the sum of $3,965.00.

f.  The public filing of their confidential information with the consent of the State of Maryland creates an opportunity for their identities to be stolen or used for improper purposes.   Further, the State of Maryland aided the request to invade their privacy by seeking confidential financial records he was not entitled.

g.  Mr. & Mrs. Davines are also entitled to nominal damages from the State of Maryland for the purposes of having to pursue this action to declare and vindicate their SCRA and Due Process rights discussed herein.

h.  They also are entitled to other out of pocket damages and losses.

161.  After the commencement of this action and it was on notice of the facts at issue, the State of Maryland failed to reasonably investigate conduct at issue and has also taken the position that it is not required to comply with its requirements under the SCRA and the Due Process Clause.  Therefore, a controversy continues between Mr. & Mrs. Davines and the State of Maryland since the State of Maryland's position is that it does not have to comply with remedial protections of the SCRA or basic Due Process protections owed to non-residents subjected to court proceedings in State of Maryland's courts.  In addition, while Mr. & Mrs. Davines have sought and acted to mitigate some of the damages incurred, the State of Maryland has elected to not reasonably do so.

## CAUSES OF ACTION

**COUNT I: Seeking Injunctive, Declaratory, and Damage Relief by the Plaintiffs
Against the State of Maryland
(Supremacy Clause, U.S. Const. Art. VI; 50 U.S.C.A. § 3901, *et seq.)*
(On behalf of all Plaintiffs against the State of Maryland)**

162.    Plaintiffs incorporate the prior paragraphs stated in this Amended Complaint as if restated here.

163.    This Count is brought individually on behalf of each of the Plaintiffs against the State of Maryland and seeks damages and injunctive and declaratory relief which the State of Maryland "sacrificed [its] sovereign immunity" in relation to the SCRA "for the good of the common defense" by ratifying the Constitution of the United States and becoming the seventh state to do so. *Torres*, 142 S. Ct. at 2469.

164.    The SCRA applies to the State of Maryland.  50 U.S.C.A. § 3912(a)(2).  *Compare Torres*, 142 S. Ct. at 2469.

165.    Under Maryland's Constitution, every person is entitled to "have remedy by the course of the Law of the Land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the Land." MD. CONST. DECL. OF RTS. art. 19.  Such remedies include those available under the SCRA which is part of the 'Law of the Land.' MD. CONST. DECL. OF RTS. ART. 2.

166.    Plaintiffs have been denied the Federal rights intended for them under the SCRA and the Due Process Clause of the Fourteenth Amendment discussed here since the denial of those rights took place under the color of law in the State of Maryland under the Foreign Judgments Act, CTS. & JUD. PROC. § 3-305, FIN. INST. § 1-304, CTS. & JUD. PROC. § 3-305, FIN. INST. § 1-304, and

MD. RULE 3-510.  The specific SCRA and Constitutional rights denied to Plaintiffs discussed herein include:

    a.    The rights that before a purported foreign judgment is enrolled in Maryland, a request for garnishment is granted, a subpoena for confidential financial records is issued, or a judgment of garnishment is granted, pursuant to 50 U.S.C.A. § 3931(b)(1) the party seeking such relief must provide an SCRA affidavit to the state court before a judgment, as defined by 50 U.S.C.A. § 3911(9), is granted or issued.

    b.    The rights that if an adverse party is on active duty with the Armed Services, before a purported foreign judgment is enrolled in Maryland, a request for garnishment is granted, a subpoena for confidential financial records is issued, or a judgment of garnishment is granted, the State of Maryland must, pursuant to 50 U.S.C.A. § 3931(b)(2), not enter or grant the relief requested against the servicemember until the court "appoints an attorney to represent the defendant."

    c.    The Due Process rights and protections under the Fourteenth Amendment for non-residents of Maryland to not be hauled into Maryland courts to defend claims in Maryland when the defendants do not reside in Maryland, have no contacts in Maryland, own no property in Maryland, and do not conduct business in Maryland.

    167.    If not for the acts and omissions under the color of law pursuant to the laws of the State of Maryland which do not comply with the SCRA, including the Foreign Judgments Act, CTS. & JUD. PROC. § 3-305, FIN. INST. § 1-304, Md. Rule 3-632, Md. Rule 3-623, MD. RULE 3-645, MD. RULE 3-645.1, MD. RULE 3-646, MD. RULE 3-510, Plaintiffs would not have been deprived their rights under the SCRA and the Due Process Clause of the Fourteenth Amendment.

168.     Maryland has recognized that declaratory relief is available and appropriate to determine judgments entered in Maryland in violation of consumer protection laws are unenforceable. *LVNV Funding LLC v. Finch*, 207 A.3d 202 (Md. 2019).

169.     Here, Plaintiffs are seeking relief against the State of Maryland's chief executive officer in his official capacity and the chief justice and other justices of the Supreme Court of Maryland in their official capacities for enforcement and application of the statutes and Maryland Rules at issue in this matter, to protect the prospective enforcement of their federal rights and protections under the SCRA and the Due Process Clause of the Fourteenth Amendment.

170.     Any person aggrieved by a violation of the SCRA is entitled to appropriate equitable or declaratory relief with respect to the violation.  50 U.S.C.A. § 4042(a)(1).

171.     As shown *supra* in practice and in text, state law (i.e., under the Foreign Judgments Act and MD. RULE 3-623) permits actors to enroll purported foreign judgments in the State of Maryland without the required affidavits and protections in violation of 50 U.S.C.A. § 3931(b)(1) and (2).  The same state laws also wrongfully permit persons the opportunity to deny the Plaintiffs their Due Process protections under the Fourteenth Amendment by forcing them to defend their rights in Maryland where they have no contacts.

172.     An enrolled foreign judgment in the State Maryland under the Foreign Judgments Act and MD. RULE 2-623 in relation to a protected servicemember qualifies as a judgment as that term is defined under the SCRA in 50 U.S.C.A. § 3911(9).

173.     As shown *supra* in practice and in text, state law (i.e., under CTS. & JUD. PROC. § 3-305 and MD. RULE 3-645, MD. RULE 3-645.1, and MD. RULE 3-646) wrongfully permits actors

to request Writs of Garnishment and thereafter Garnishment Judgments in the State of Maryland without the required affidavit in violation of 50 U.S.C.A. § 3931(b).

174.    A Writ of Garnishment and Judgment of Garnishment in the State of Maryland in relation to a protected servicemember under CTS. & JUD. PROC. § 3-305 and MD. RULE 3-645, MD. RULE 3-645.1, and MD. RULE 3-646 qualifies as a judgment as that term is defined under the SCRA in 50 U.S.C.A. § 3911(9).

175.    As shown *supra* in practice and in text, state law (i.e., under FIN. INST. § 1-304 and MD. RULE 3-510) wrongfully permits actors to request subpoenas for confidential financial records in the State of Maryland without the required affidavit in violation of 50 U.S.C.A. § 3931(b).

176.    A subpoena issued by the State of Maryland in relation to a protected service member qualifies a judgment as that term is defined under the SCRA in 50 U.S.C.A. § 3911(9).

177.    Under the Supremacy Clause, U.S. Const. Art. VI the protections of the SCRA are supreme over state law and state procedural rules.  In other words, the State of Maryland may not reduce the protections entitled for servicemembers and other protected persons under the SCRA including but not limited to the entry of any judgment without strict compliance with the SCRA.

178.    By permitting actors persons to utilize Maryland Courts and collection tools without first complying with the minimum requirements of the SCRA when: (i) enrolling and recording purported foreign judgments; (ii) obtaining writs of garnishments and subpoenas; and (iii) obtaining garnishment judgments, the State of Maryland's laws and rules of procedure subject to this action permit violations of the SCRA and have caused damages to the Plaintiffs described *supra*.

179.    Plaintiffs are also entitled to injunctive relief against the State of Maryland which:

a.   Enjoins any enforcement of judgments, as that term is defined in 50 U.S.C.A. § 3911(9), enrolled or requested in its court proceedings that do not comply with the SCRA; and

b.   Enjoins the issuance of any further judgments, as that term is defined in 50 U.S.C.A. § 3911(9), in violation of the mandatory procedural requirements of the SCRA.

180.   Unless the State of Maryland is enjoined, Plaintiffs and others will suffer irreparable harm and be unlawfully denied the protections they are entitled under the law.

181.   Plaintiffs are also entitled to Declarations of Law that pursuant to the Supremacy Clause, U.S. Const. Art. VI, the SCRA's strict requirements, to the extent inconsistent, preempt the:

a.   Uniform Enforcement of Foreign Judgments Act. CTS. & JUD. PROC. § 11-801, *et seq.;*

b.   CTS. & JUD. PROC. § 3-305; and

c.   FIN. INST. § 1-304.

182.   Plaintiffs are also entitled to Declarations of Law that pursuant to the Supremacy Clause, U.S. Const. Art. VI, the SCRA's strict requirements preempt MD. RULE 3-645, MD. RULE 3-645.1, MD. RULE 3-646, MD. RULE 2-645, MD. RULE 2-645.1, MD. RULE 2-646, MD. RULE 3-510, or MD. RULE 2-510 to the extent inconsistent.

183.   Plaintiffs are also entitled to a prospective injunction against the State of Maryland requiring it to expunge and seal any judgments obtained by LeMay as reflected in the State of Maryland's court records since they were obtained in violation of the SCRA based upon the State of Maryland's failure to comply with its mandatory duties under the SCRA.

184.    Pursuant to the SCRA, Maryland should be enjoined to amend its laws and the Maryland Rules to bar violations of the SCRA and the Due Process Clause of the Fourteenth Amendment described herein.

185.    Pursuant to the SCRA, Plaintiffs are also entitled to a judgment of damages, reasonable attorney fees, and costs authorized under the SCRA against the State of Maryland discussed herein.

186.    The relief sought herein from the State of Maryland by the Plaintiffs is expressly authorized by Congress in the SCRA itself by permitting "any person," including the Plaintiffs in this action to "(1) obtain any appropriate equitable or declaratory relief with respect to the violation[s] [of the SCRA]; [and] (2) recover all other appropriate relief, including monetary damages." 50 U.S.C.A. § 4042.

187.    Here, certain additional damages, losses, and attorney fees sought by the Plaintiffs that were proximately caused by the State of Maryland could have been avoided or mitigated by the State of Maryland but instead of withdrawing their arguments and positions in violation of the decision of *Torres v. Texas Dep't of Pub. Safety*, 142 S. Ct. 2455, the State of Maryland elected instead to maintain legal arguments which it knew it had no right to maintain until January 2023. Even then, the State of Maryland refused to withdraw the arguments previously advanced and maintained for over six months should have been withdrawn by any basic review of *Torres.* Under the circumstances presented this other appropriate relief is justified and necessary in this case to ensure the remedial purposes of the SCRA are protected and the State of Maryland is held accountable for its decision to ignore the law.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs pray that this Court:

A.   Pursuant to Count I, Plaintiffs request a preliminary and permanent injunction against the State of Maryland to enjoin any issuance or enforcement of any purported judgments, as that term is defined in 50 U.S.C.A. § 3911(9), including foreign judgments, requests for garnishments or subpoenas for financial records, or judgments of garnishments, enrolled or obtained any person in its court proceedings that do not comply with the basic requirements of the SCRA—i.e., including the presentation of a 50 U.S.C.A § 3912(b)(1) affidavit and appointment of counsel for a defendant/party who is an active duty servicemember before any judgment is enrolled, recorded, and enforced as required by 50 U.S.C.A. § 3931(b)(2).

B.   Pursuant to Count I, Plaintiffs request a preliminary and permanent injunction against the State of Maryland to enjoin it to expunge from its public records any judgments, as that term is defined in 50 U.S.C.A. § 3911(9), including foreign judgments, requests for garnishments or subpoenas for financial records, or judgments of garnishments, enrolled or obtained by LeMay against the Plaintiffs in violation of the requirements of the SCRA. This additional "appropriate relief" is authorized by 50 U.S.C.A. § 4042 to partially remedy the State of Maryland's specific violations of the SCRA while disregarding the rights and protections it owed to the Plaintiffs.

C.   Pursuant to Count I, Plaintiffs further request Declarations of Law that pursuant to the Supremacy Clause, U.S. Const. Art. VI, the SCRA preempts Maryland law including the Uniform Enforcement of Foreign Judgments Act (Cts. & Jud. Proc. § 11-801, *et seq.,* Cts. & Jud. Proc. § 3-305, and Fin. Inst. § 1-304), and any judgments obtained in violation of the SCRA in the State of Maryland, as the term judgment is defined under 50 U.S.C.A. § 3911(9), are unenforceable.

   D.  Pursuant to Count I also award Plaintiffs: (i) judgments of liability in their favor and against the State of Maryland under the SCRA as authorized by the holding in *Torres v. Texas Dep't of Pub. Safety*, 142 S. Ct. 2455; (ii) an award of actual damages in a sum in excess of $75,000.00 each family caused by the State of Maryland's violations of the SCRA including but not limited to its failure to appoint counsel to protect the rights of the Plaintiffs as required by the SCRA in the any of the state actions; and (iii) an additional award of reasonable attorney's fees and costs in their favor as permitted under the SCRA and incurred in this action.

   E.  Grant such other relief as the Court may deem just and proper.

Dated: March 3, 2023

                                        *//s//Phillip R. Robinson*
                                        Phillip R. Robinson (Bar No. 27824)
                                        Consumer Law Center LLC
                                        10125 Colesville Road, Suite 378
                                        Silver Spring, MD  20901
                                        Phone (301) 448-1304
                                        phillip@marylandconsumer.com

                                        *Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

   I hereby certify that a true and correct copy of the foregoing and exhibits thereto was filed and served on all counsel of record on the date of its filing with the Court via the Court's electronic filing system.

                                        */s/Phillip R. Robinson*

                                        Phillip R. Robinson